# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

DANIEL FRYE; MARY JEAN SHINER; )
JEFFREY J. DICKINSON; NATIONAL )
FEDERATION OF THE BLIND, INC.; ) Case No.:
NATIONAL FEDERATION OF THE )
BLIND OF NEW HAMPSHIRE, INC.; and )
GRANITE STATE INDEPENDENT )
LIVING, )
 )
   Plaintiffs, )
 )
  vs. )
 )
WILLIAM M. GARDNER, in his official )
capacity as the Secretary of State of New )
Hampshire; and the NEW HAMPSHIRE )
DEPARTMENT OF STATE, )
 
   Defendants.

---

## COMPLAINT

### INTRODUCTION

1. Daniel Frye, Mary Jean Shiner, Jeffrey Dickinson, the National Federation of the Blind, Inc. ("NFB"), the National Federation of the Blind of New Hampshire, Inc. ("NFB-NH"), and Granite State Independent Living ("GSIL") (collectively "Plaintiffs"), bring this action against Defendants William M. Gardner, in his official capacity as the Secretary of State of New Hampshire, and the New Hampshire Department of State under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq*.

2. Plaintiffs seek to vindicate the right of individuals with disabilities to register and vote absentee privately and independently in the September 8, 2020 primary election and in future elections. Federal law guarantees people with disabilities, including Plaintiffs, an

opportunity to a private, independent absentee vote that is equal to the opportunity voters without disabilities enjoy. In ordinary times, the rights guaranteed by the ADA and Section 504 are fundamental to the ability of people with disabilities to live with dignity and independence and to enjoy full integration into their communities. Now, with the COVID-19 pandemic, these rights have, in some cases, become matters of life and death. By seeking an accessible absentee vote, Plaintiffs seek not only the same convenience others enjoy, but also the means that the state grants voters without disabilities to protect themselves from the pandemic. Plaintiffs have been denied the right to a private and independent absentee vote, and in some cases the right to vote at all, in violation of federal laws. On the basis of these violations, Plaintiffs seek preliminary and permanent injunctive relief, a declaratory judgment, attorneys' fees and costs, and any other available relief.

3.      As a result of the once-in-a-century impact of the COVID-19 pandemic, for the first time, New Hampshire has, for practical purposes, expanded access to its absentee registration and ballot program to all voters. It expects in the upcoming September 8, 2020 primary election, a substantial number of residents will choose to safely vote via absentee ballot instead of voting in person where they risk their health.

4.      But this safer option to vote at home and whenever it is convenient to do so is not available to New Hampshire residents who are blind[1] or have other print disabilities, because New Hampshire's absentee voting program (including absentee registration, application for an absentee ballot, and the absentee ballots themselves) is inaccessible to them. New Hampshire's absentee voting program relies on printed forms and ballots that print-disabled voters cannot read

---

[1] Throughout this Complaint, the term "blind" is used in its broadest sense to include all persons who, under federal civil rights laws, have a vision-related disability that requires alternative methods to access print.

or mark independently. New Hampshire does not offer an accessible, electronic means of obtaining voting information and an absentee ballot, much less accessible, electronic absentee ballot marking. Other jurisdictions successfully offer print-disabled voters such opportunities, and the technology is presently available to be used in New Hampshire.

5. The inaccessible absentee ballot system in New Hampshire is part of a long history of discriminatory barriers—from inaccessible polling or voter registration places, to inaccessible voting machines, to the contemptuous attitude of poll workers—that people with disabilities have had to endure.[2]

6. As a consequence, their voter turnout has been lower than turnout among voters without disabilities.[3] In fact, as voter turnout among people without disabilities soared from 50.1% to 57.2% between the 2014 and 2018 midterm elections, turnout among people with disabilities *dropped* from 50.6% to 46.9%. This does not reflect a lack of interest in voting. Voter turnout has increased substantially across the country in recent years, as states reduce barriers to voting for the disabled. New Hampshire is one of only six states that saw voter participation among people with disabilities drop from 2014 to 2018, and it has the eighth largest gap, as a percentage of voters, between turnout among people with disabilities and those without.[4]

7. One barrier to voting for people with disabilities is New Hampshire's reliance on exclusively paper forms and ballots for absentee voting, which prevents people who have print disabilities from casting a private vote.

---

[2] N.H. Advisory Comm. to the U.S. Comm'n on Civil Rights, *Voting Rights in New Hampshire* 15 (2018), https://www.usccr.gov/pubs/2018/05-16-NH-Voting-Rights.pdf.

[3] Lisa Schur & Douglas Kruse, Rutgers Sch. of Mgmt. & Labor Relations, *Fact Sheet: Disability and Voter Turnout in the 2018 Elections* 7 (2020), https://smlr.rutgers.edu/sites/default/files/2018disabilityturnout.pdf.

[4] *Id.* at 6–7.

8.      New Hampshire's absentee ballot system places Plaintiffs in an impossible bind. Plaintiffs must either: a) forfeit their right to vote privately and independently, or b) risk their health and the health of their loved ones by voting in person.

9.      Because individuals without disabilities may register and vote via New Hampshire's absentee services privately and independently, the ADA and Section 504 require Defendants to provide individuals with disabilities—including Plaintiffs—an equal opportunity to do the same.

10.     New Hampshire must implement a permanent solution—an accessible, electronic absentee voting program—so that voters with print disabilities have equal access to vote absentee independently and privately in all elections.

11.     By refusing to make absentee voting accessible, New Hampshire has treated Plaintiffs like second-class citizens; ignored their basic rights to security, equality, and dignity; and unlawfully undermined their fundamental right to vote.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs' claims arise under the ADA and Section 504. In addition, the Court has jurisdiction over Plaintiffs' claims for declaratory relief pursuant to 28 U.S.C. §§ 2201–02.

13.     Venue is proper in the District of New Hampshire pursuant to 28 U.S.C. § 1391(b)(1), because Defendants reside in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

14.     Plaintiff Daniel Frye is a blind adult who is registered to vote in New Hampshire.

Mr. Frye is a member of the National Federation of the Blind of New Hampshire and the National Federation of the Blind.[5] He resides in Concord, New Hampshire, with his wife, who is immunocompromised. Mr. Frye is a regular voter who intends to vote in the September 8, 2020 primary election, the November 3, 2020 general election, and subsequent elections. Mr. Frye prefers to vote absentee in at least the upcoming 2020 elections.

15.     Plaintiff Mary Jean Shiner is a blind adult who is registered to vote in New Hampshire. She is a member of the National Federation of the Blind of New Hampshire and the National Federation of the Blind. She resides in Exeter, New Hampshire, and is a regular voter who intends to vote in the September 8, 2020 primary election, the November 3, 2020 general election, and subsequent elections. Ms. Shiner prefers to vote absentee.

16.     Plaintiff Jeffrey Dickinson is an adult with a disability who is registered to vote in New Hampshire. He has Becker's Muscular Dystrophy, which causes severe muscle weakness throughout his body and severely limits the use of his arms and hands. He cannot fill out and sign paper forms independently. He is a client of GSIL. Mr. Dickinson resides in Franklin, New Hampshire, and is a regular voter who intends to vote in the September 8, 2020 primary election, the November 3, 2020 general election, and subsequent elections. He prefers to vote absentee in the upcoming 2020 elections and wants the option to vote absentee in subsequent elections.

17.     NFB is a 501(c)(3) non-profit corporation comprised of blind individuals and their families and friends. It is a membership organization. The organization promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family and

---

[5] Members of state affiliates are automatically members of the National Federation of the Blind.

community life, transportation, recreation, politics, and voting. NFB's goal of complete integration of the blind into society on a basis of equality includes removal of legal, economic, and social discrimination. NFB advances its members' right to participate fully and equally in all aspects of their lives, including by ensuring its blind members can vote on equal footing with sighted individuals. Among other efforts, NFB has worked to ensure that the blind have an equal opportunity to vote on the same terms as other voters by collaborating with developers of voting technology to ensure accessibility for the blind. NFB also advocates in front of state executive and legislative bodies, including in New Hampshire, for improved accessibility in state voting programs. If New Hampshire's absentee voting program were fully accessible, NFB could direct the resources it spends on that matter to other elements of its mission.

18. Plaintiff NFB-NH is the New Hampshire affiliate of the National Federation of the Blind. NFB-NH is a 501(c)(3) non-profit corporation comprised of blind New Hampshire residents and their families and friends. It is a membership organization. NFB-NH advances its members' right to participate fully and equally in all aspects of their lives, including by ensuring its blind members can vote on equal footing with every other New Hampshire resident. Among other efforts, NFB-NH has worked to ensure the blind have an equal opportunity to vote on the same terms as other voters by collaborating with developers of voting technology to ensure accessibility for the blind.

19. NFB and NFB-NH have many blind members, including Mr. Frye and Ms. Shiner, who are eligible to vote in New Hampshire and wish to vote in upcoming elections, including the September 8 and November 3, 2020 elections, by casting an absentee ballot privately and independently. NFB and NFB-NH bring this lawsuit on behalf of themselves and on behalf of their members.

20.     Plaintiff GSIL is a 501(c)(3) non-profit corporation and operates as an independent living center serving persons with all kinds of disabilities throughout New Hampshire. Its mission is to enhance opportunities for all people with disabilities to direct their own lives. Among its other projects, GSIL has devoted resources to advocating with the executive and legislative branches of state government to improve accessibility in New Hampshire's voting programs. If New Hampshire's absentee voting program were fully accessible, GSIL could devote those resources to other elements of its mission. GSIL has numerous clients, including Mr. Dickinson, who are eligible to vote in New Hampshire and wish to participate in New Hampshire's absentee voting program in the upcoming 2020 elections but have print disabilities and therefore cannot do so on an equal and independent basis. GSIL's clients are qualified individuals with disabilities within the meaning of all applicable statutes. GSIL brings this lawsuit on behalf of itself and on behalf of its clients.

21.     Defendant Gardner is the Secretary of State of New Hampshire and, in that position, leads the Department of State. Defendant Gardner supervises and administers New Hampshire's elections, including the absentee voting program. He is sued in his official capacity only.

22.     Defendant Department of State is the executive department within the New Hampshire state government tasked with supervising and administering elections within the state.

## FACTUAL ALLEGATIONS

### COVID-19's Effect on New Hampshire's Upcoming Elections

23.     Nationwide, as of July 6, 2020, there have been 2,886,267 total cases of COVID-

19, and 129,811 deaths, according to the Centers for Disease Control and Prevention ("CDC").[6] In New Hampshire, as of July 6, 2020, there have been 5,914 total cases of COVID-19 and 382 deaths.[7]

24. Adults with disabilities are three times more likely than adults without disabilities to have serious underlying medical conditions that place them at a higher risk of severe illness from COVID-19.[8]

25. To inhibit the spread of COVID-19, the CDC has encouraged people to use an absentee ballot rather than voting in person.[9]

26. Technology is readily available that would afford Plaintiffs, and other voters who have print disabilities, the opportunity to cast their votes through absentee ballots privately and independently—as sighted individuals may do. But Defendants have refused to make this technology available to Plaintiffs.

27. The need for immediate implementation of an accessible absentee voting program is urgent in light of the ongoing COVID-19 global pandemic and the pendency of the next statewide election to be held in 63 days.

28. New Hampshire first declared a state of emergency due to COVID-19 on March

---

[6] *Coronavirus Disease 2019 (COVID-19): Cases in the U.S.*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited July 7, 2020).

[7] *COVID-19 Summary Dashboard*, N.H. Dep't of Health & Human Servs., https://www.nh.gov/covid19/dashboard/summary.htm (last visited July 7, 2020).

[8] *See Coronavirus Disease 2019 (COVID-19): People with Disabilities*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html (last visited July 7, 2020).

[9] *See Coronavirus Disease 2019 (COVID-19): Recommendations for Election Polling Locations*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last visited July 7, 2020).

13, 2020,[10] and has continuously renewed the state of emergency since that time, with the current extension through July 17, 2020.[11]

29.     The Select Committee on 2020 Emergency Election Support ("Select Committee") appointed by Secretary Gardner recently advised that the safety of the upcoming elections is "highly dependent on a robust use of absentee registration and voting"[12] and that the state must "encourage absentee balloting in greater numbers, thus allowing for a safer environment on election day at the polls."[13]

30.     New Hampshire law allows only certain people to vote absentee, including people "who [are] unable to vote . . . in person by reason of physical disability."[14] Secretary Gardner and Attorney General Gordon MacDonald have issued guidance clarifying that, due to COVID-19 *all voters* have a reasonable ground to conclude that a 'physical disability' exists within the meaning of RSA 657:1. Therefore, *all voters may request an absentee ballot on that basis*."[15]

31.     Most New Hampshire voters are expected to vote by absentee ballot in the upcoming elections. The Select Committee estimates that 60–85% of voters will vote absentee

---

[10] Executive Order 2020-04, N.H. Office of the Governor, https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/2020-04.pdf.

[11] Executive Order 2020-14, N.H. Office of the Governor, https://www.governor.nh.gov/sites/g/files/ehbemt336/files/documents/2020-14.pdf.

[12] *Report of the Select Committee on 2020 Emergency Election Support* 8 (2020), https://sos.nh.gov/WorkArea/DownloadAsset.aspx?id=8589999347 (hereinafter "*Select Committee Rpt.*").

[13] *Id.* at 12.

[14] RSA 657:1(I).

[15] Mem. from William M. Gardner, Sec'y of State, & Gordon J. MacDonald, Att'y Gen., to N.H. Election Officials 1 (April 10, 2020), https://www.nhpr.org/sites/nhpr/files/202004/covid-19_elections_guidance.pdf.

on September 8 and November 3.[16] Historically, only about 5% of voters have voted absentee.[17]

32.     The dangers posed by in-person voting are real. Wisconsin officials reported that at least 40 people in Milwaukee may have contracted COVID-19 due to in-person participation in that state's April 7, 2020 primary election.[18]

33.     Blind people, including Plaintiffs, face higher risks voting in person, because it is more difficult for them to ensure they remain six feet apart from other individuals, as is recommended by the CDC to stem the spread of COVID-19. Not only can blind people often not see others around them, but blind people often come into unwanted physical contact with others, because they are frequently grabbed by misguided individuals seeking to "help" them.

34.     The journey to a polling place also is more hazardous for blind individuals, including Plaintiffs, than it is for sighted individuals. Because blind individuals cannot drive, they disproportionately rely on public transportation services, which necessarily bring them into close proximity with others. Even an ideal in-person voting experience therefore entails risks.

**Plaintiff Daniel Frye**

35.     Daniel Frye is legally blind and lives in Concord, New Hampshire, with his wife, who is also legally blind and immunocompromised.

36.     Mr. Frye is a registered voter and has regularly voted in past New Hampshire elections.

37.     Because of the COVID-19 pandemic and his wife's heightened susceptibility to

---

[16] *Select Committee Rpt.*, *supra* n.12, at 9.

[17] *Id.*

[18] Teran Powel, *40 Coronavirus Cases In Milwaukee County Linked To Wisconsin Election, Health Official Says*, WUWM 89.7 (Apr. 24, 2020), https://www.wuwm.com/post/40-coronavirus-cases-milwaukee-county-linked-wisconsin-election-health-official-says#stream/0.

COVID-19, Mr. Frye does not feel safe voting in person, and he does not intend to vote in person for the September 8 or November 3, 2020 primary and general elections.

38.     Mr. Frye is concerned about the sterility of voting in person. He will not be able to confirm independently (without touching or reaching out for others) that other individuals will wear gloves or face masks in order to help prevent the spread of the COVID-19 virus. If he were to vote in person, he could not determine whether the people surrounding him were maintaining adequate "social distancing." He has often been grabbed by strangers who assume he needs help when he does not.

39.     Voting independently and privately is important to Mr. Frye. He has not applied for an absentee ballot but would do so if the process were accessible.

40.     Mr. Frye is unable to independently apply for an absentee ballot or vote independently and privately using an absentee ballot, because Defendants have not made the process accessible to voters with print disabilities.

**Plaintiff Mary Jean Shiner**

41.     Mary Jean Shiner lives in Exeter, New Hampshire, with her husband. Ms. Shiner is legally blind.

42.     Ms. Shiner is a registered voter who has regularly voted in past New Hampshire elections. Usually she has voted in-person using the accessible one4all ballot marking machine.

43.     Because of the COVID-19 pandemic, Ms. Shiner does not feel safe voting in person, and she does not intend to vote in person for the September 8 or November 3, 2020 primary and general elections.

44.     Ms. Shiner is concerned about the sterility of in-person voting. She will not be able to confirm that other individuals will wear gloves or face masks to help prevent the spread of the COVID-19 virus. If she were to vote in person, she could not determine whether the

people surrounding her were maintaining adequate "social distancing." She also has concerns about using the one4all machine because it is usually set up in a closely confined area that makes social distancing impossible, and she would have to use the keyboard without gloves to feel the appropriate keys to mark the ballot.

45.     Voting independently and privately is important to Ms. Shiner. She has not applied for an absentee ballot but would do so if the process were accessible.

46.     Ms. Shiner is unable to apply for an absentee ballot or vote independently and privately using an absentee ballot, because Defendants have not made the process accessible to voters with print disabilities.

**Plaintiff Jeffrey Dickinson**

47.     Jeffrey Dickinson lives in Franklin, New Hampshire. Mr. Dickinson is GSIL's Advocacy Director and a client of GSIL.

48.     Mr. Dickinson has Becker's Muscular Dystrophy, which causes severe muscle weakness throughout his body. It is a progressive condition that leaves him with extremely limited use of his arms and hands. Writing on and signing his name to documents is difficult to impossible.

49.     Mr. Dickinson is a registered voter who has regularly voted in past New Hampshire elections.

50.     Because of the COVID-19 pandemic, Mr. Dickinson does not feel safe voting in person, and he does not intend to vote in person for the September 8 or November 3, 2020 primary and general elections.

51.     Mr. Dickinson is concerned about the sterility of in-person voting. Muscular Dystrophy frequently impacts breathing. In 2014, he suffered nearly fatal respiratory failure which resulted in a month-long hospital stay and placement of a tracheostomy. His diminished

breathing capacity and tracheostomy make him very susceptible to any kind of respiratory infection such as COVID-19. He is also concerned about passing COVID-19 onto his caregivers, two of whom are at heightened risk, and his elderly parents who visit him every Sunday.

52.     Voting independently and privately is important to Mr. Dickinson. He typically asks his personal care attendants to fill out and sign forms for him. He is concerned about disclosing his voting choices and the effect doing so may have on his relationships with caregivers who may disagree with him. He has not applied for an absentee ballot but would do so if the process were accessible.

53.     Mr. Dickinson is unable to apply for an absentee ballot or vote independently and privately using an absentee ballot, because Defendants have not made the process accessible to voters with print disabilities.

### The Absentee Voting Program in New Hampshire

54.     For the first time, all voters in New Hampshire have grounds to vote absentee.

55.     To receive an absentee ballot, an individual must first register to vote.

56.     To register to vote, an individual must ordinarily apply in person to his or her town or city clerk's office.[19] Individuals must provide proof of identity, age, citizenship, and domicile, either by documents or by signing a Qualified Voter Affidavit under oath in front of an election official.[20] Only voters who are temporarily absent from their town or city of residence or "who by reason of physical disability [are] unable to attend a meeting of the supervisors of the checklist" may register absentee, which requires the voter to include an absentee registration

---

[19] New Hampshire also allows same-day voter registration at polling places on election day. RSA 654:7-a.

[20] N.H., *Registering to Vote in New Hampshire* (2019), https://sos.nh.gov/WorkArea/ DownloadAsset.aspx?id=8589993087.

affidavit along with the voter registration form in the packet sent to the city or town clerk.[21]

57.     Secretary Gardner and Attorney General MacDonald have issued guidance clarifying that, due to COVID-19, "*all voter registration applicants* have a reasonable basis to conclude that a 'physical disability' exists within the meaning of RSA 654:16 and 654:17. . . . Therefore, *all applicants may request an absentee voter registration package by mail, e-mail, fax, or phone on that basis*."[22]

58.     To receive an absentee ballot, an individual completes and signs an absentee ballot application and submits it to the clerk of the town or city in which he or she desires to vote.[23]

59.     New Hampshire allows voters request an absentee voter registration packet and/or absentee ballot up until the day before the election.[24]

60.     "Upon receipt of a properly executed application for an official absentee ballot," the clerk verifies that the voter is on the local rolls and, if so, sends the voter a paper absentee ballot, an envelope on which is written an affidavit attesting to the reason the voter needed to vote absentee, and a return envelope.[25] The law allows New Hampshire officials to send the absentee ballot materials by mail or hand delivery. Voters living overseas may receive the ballot

---

[21] RSA 654:16–19.

[22] Mem. from William M. Gardner, Sec'y of State, & Gordon J. MacDonald, Att'y Gen., to N.H. Election Officials 1 (June 3, 2020), https://sos.nh.gov/WorkArea/DownloadAsset.aspx?id=8589999164 (hereinafter "Voter Registration Guidance").

[23] RSA 657:6. A person can also apply for an absentee ballot by sending the clerk "a written statement containing the information required by RSA 657:4"—i.e., the information solicited on the absentee ballot application, presumably including the same signature requirements. *Id.*

[24] Voter Registration Guidance, *supra* n.22, at 3.

[25] RSA 657:12–13.

via email.[26]

61.　　The voter must fill out the absentee ballot, place the ballot in the inner envelope, and execute the affidavit. The voter then places the ballot envelope in the return envelope, "endorse[s]" his or her name, address, and voting place, and returns the ballot to the city or town clerk by hand delivery or mail. Absentee ballots must be received by the clerk by 5:00 p.m. on the day of the election.[27]

62.　　For New Hampshire voters residing in the United States, there is no option for requesting, receiving, marking, or submitting an absentee ballot electronically. All absentee ballots must be marked by hand and delivered in hard copy.

**New Hampshire's Absentee Voting Program Is Inaccessible**

63.　　Every step of New Hampshire's absentee voting program is inaccessible. In other words, voters with print disabilities cannot participate in this program without depending on others for help, sacrificing their independence and their privacy.

64.　　New guidance issued by the Secretary of State related to voting during the pandemic is inaccessible to individuals using screen-reading software.[28] For example, a fact sheet instructing voters how to register to vote by mail lacks a heading structure, contains several links that are not clickable, and contains images with substantive information that lack alt-text.[29]

65.　　On information and belief, the website the Secretary of State has established for voting during the pandemic, http://sos.nh.gov/VotingEmergency.aspx, is not fully accessible to

---

[26] RSA 657:15(I).

[27] RSA 657:17.

[28] Screen readers are a class of software that convey to a blind person what sighted people see on a screen via text-to-speech or a refreshable Braille display.

[29] N.H., *Covid-19 Related Registration and Voting Instructions*, http://sos.nh.gov/WorkArea/ DownloadAsset.aspx?id=8589999336.

people using a screen-reader.

66.     The form affidavit for voters registering absentee because of physical disability is not accessible—*i.e.*, it is not available as an electronic fillable form that can be read and completed by a blind person using a screen-reader, and it must be signed by hand.[30]

67.     The voter registration form is not available online and must be requested from the resident's town or city clerk. On information and belief, this form is not available in a fully accessible format.

68.     While the Application for State Election Absentee Ballot is available as an electronic fillable form, it must be printed and signed by hand.[31] People who are blind cannot locate the place for signature without assistance, and people with print disabilities generally cannot sign without assistance.

69.     The Application for State Election Absentee Ballot requires voters requesting a ballot for the primary election to reveal their party affiliation. Thus, a voter will not be able to keep this information private from the person assisting them.

70.     Absentee ballots themselves are transmitted, marked, and returned entirely on paper. This process requires the voter to:

     A.     Read the ballot in hard copy and fill it out by hand;

     B.     Place the completed ballot inside the secrecy envelope, locate the place for signature, and sign the attestation;

     C.     Seal the secrecy envelope and place it inside the return envelope, locate the place for the voter's name, address, and polling place, and endorse the same.

---

[30] N.H., *Absentee Voter Registration Form – Physically Disabled*, https://sos.nh.gov/WorkArea/DownloadAsset.aspx?id=8589999328. Although this document is entitled "Absentee Voter Registration Form," it is in fact only the accompanying affidavit.

[31] N.H., *Application for State Election Absentee Ballot-RSA 657:4: Absence, Religious Observance, and Disability*, https://sos.nh.gov/WorkArea/DownloadAsset.aspx?id=8589999327.

71.     Blind people cannot locate the correct places to mark their ballots or envelopes without assistance, and voters with print disabilities generally cannot mark their ballots or complete the affidavit or mailing information without assistance. Thus, a voter will not be able to keep this information, including their vote, private from the person assisting them.

72.     Many print-disabled individuals do not have assistance in their homes to complete paper absentee ballots and, even if assistance is available, print-disabled voters sacrifice their privacy and independence by having to rely on that assistance.

73.     The result is that, while non-disabled individuals may vote independently and privately without having to vote in person during the COVID-19 pandemic, individuals with print disabilities cannot.

74.     New Hampshire recognizes that its absentee voting program is inaccessible to blind individuals. The solution New Hampshire contemplates is for someone to assist blind voters, not to provide an accessible absentee voting program.[32]

75.     By forcing Plaintiffs and other individuals with print disabilities to seek out third-party assistance, the absentee voting program jeopardizes their safety during the COVID-19 pandemic.

76.     Although Plaintiffs could vote in person on September 8 and November 3, 2020, doing so may put their health and lives at risk. Plaintiffs are entitled to equal access to New Hampshire's absentee voting program to vote privately, secretly, independently, and safely, as individuals without disabilities can.

---

[32] RSA 657:7.

**New Hampshire Can Make Its Absentee Voting Program Accessible**

77.     Technology is available and in use across the country that allows voters with disabilities to register to vote and request, receive, fill out, and even return their absentee ballots electronically.

78.     Several third-party vendors provide online or electronic ballot marking systems. These include Prime III, Democracy Live, Five Cedars, Dominion Voting, and Voting Works by Enhanced Voting. Maryland has designed and implemented its own online ballot marking system.

79.     Maryland makes its ballot marking software available to other states for free, and both Prime III and Voting Works are also available free of charge.

80.     For forms (other than the ballot) related to the absentee voting program, Defendants need simply provide the paperwork in accessible, fillable PDFs and allow applicants to use electronic signatures and submit the forms over email. Making such forms accessible is easily done in Adobe. Such forms can also be securely signed on the computer.

81.     Several states have recently changed their absentee ballot procedures to make them accessible to print-disabled voters. Some of those changes have come voluntarily, others in response to court orders.

82.     For example, pursuant to a court-ordered stipulation as a temporary measure for its imminent June 23, 2020 primary, New York allowed voters to request accessible absentee ballots by email, receive the ballots and an envelope template over email, mark the ballots on their computers, then print and return them by mail. New York accepted typed or electronic signatures for the application for an absentee ballot and a signature anywhere on the envelope

returning the ballot.[33]

83.     In May 2020, Michigan voluntarily entered into a consent decree requiring it to "acquire a remote accessible vote-by-mail system ('RAVBM') that shall allow voters with print disabilities to review and mark vote-by-mail ballots electronically, privately and independently" in time for its August 2020 election.[34]

84.     On July 1, 2020, Delaware announced the relaunch of its pilot accessible absentee voting program through Democracy Live for its July 7, 2020 election. New Hampshire contracts with Democracy Live for its election systems. The Delaware program offers electronic delivery of accessible absentee ballots, a ballot marking tool, and submission by voter choice of mail, fax, or email for military and overseas voters as well as voters with disabilities.[35]

85.     As of September 2019, nearly half of states allowed electronic return of ballots in at least some circumstances.[36]

86.     According to public records, New Hampshire has a very significant pool of unused federal funds earmarked for making elections accessible and secure, which could and should be used to resolve this issue. Between three different federal disbursements to the state pursuant to the Help America Vote Act, 52 U.S.C. 20901 *et seq* ("HAVA"), in excess of $6

---

[33] Ex. 1, Stipulation of Settlement & Order for the Withdrawal of the Motion for Temporary Restraining Order & Preliminary Injunction, *Hernandez v. N.Y. State Bd. of Elections*, Case No. 1:20-cv-04003-LJL (S.D.N.Y. June 2, 2020), ECF No. 38.

[34] Ex. 2, Consent Decree, *Powell v. Benson*, Case No. 2:20-cv-11023-GAD-MJH (E.D. Mich. May 19, 2020), ECF No. 31.

[35] Press Release, Del. Dep't of Elections, Accessible Voting Available for July 7th Presidential Primary (July 1, 2020), https://news.delaware.gov/2020/07/01/accessible-voting-available-for-july-7th-presidential-primary.

[36] *Electronic Transmission of Ballots*, Nat'l Conference of State Legislatures, https://www.ncsl.org/research/elections-and-campaigns/internet-voting.aspx (last visited June 19, 2020).

million is presently available to New Hampshire.[37] In addition, New Hampshire received $3.2 million pursuant to the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136 (2020) ("CARES Act"), in 2020.[38]

### Plaintiffs Gave Defendants Notice of the Accessibility Barriers in New Hampshire's Absentee Voting Program

87.     Defendants have been told—on many occasions—that the failure to make New Hampshire's absentee voting program accessible to blind individuals violates the ADA and Section 504.

88.     In a 2019 letter to Defendant Gardner advocating for an accessible absentee voting program, NFB President Mark A. Riccobono noted that "providing only a paper absentee ballot that was inaccessible" denies blind individuals their right to vote independently and privately and violates federal laws.

89.     On June 15, 2020, DRCNH met with David Scanlon, Orville Fitch, and Patricia Piecuch from the Secretary of State's office to discuss the state's willingness to ensure the accessibility of its absentee voting program consistent with the ADA, Section 504, and the New Hampshire Constitution. The officials were unwilling to commit to any specific plan.

90.     On June 19, 2020, Plaintiffs NFB and NFB-NH and DRCNH sent a letter to Secretary Gardner explaining the accessibility barriers in the absentee voting program, suggesting solutions, and warning of the possibility of litigation if New Hampshire did not address these issues promptly.

91.     The NFB and NFB-NH conferred with the state on June 26, 2020, but the parties

---

[37] U.S. Election Assistance Comm'n, *Grant Expenditure Report: Fiscal Year 2018*, at 4, 6 (2019), https://www.eac.gov/sites/default/files/eac_assets/1/6/FY2018HAVAGrantsExpenditureReport.pdf.

[38] *Select Committee Rpt.*, *supra* n.12, at 1.

were unable to reach a resolution.

92.     Other disability rights advocates also have explained the accessibility problems—and violations of federal law—outlined in this Complaint to Defendants.

93.     To date, Defendants have not made New Hampshire's absentee voting program accessible to print-disabled individuals, including Plaintiffs, who wish to exercise their right to vote in the September 8 and November 3, 2020 elections, and future elections, but do not wish to risk their health, privacy, or independence to do so.

**COUNT I**
**Violation of Title II of the Americans with Disabilities Act**
**42 U.S.C. §§ 12131–12134**

94.     Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

95.     Title II of the ADA guarantees qualified individuals an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

96.     Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

97.     In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

98.     Public entities must make reasonable modifications to their policies, practices, and procedures when necessary to avoid discrimination against individuals with disabilities. *Id.* § 35.130(b)(7)(i).

99.     Public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others" and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160.

100.    To be effective, "auxiliary aids and services must be provided in . . . such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2).

101.    Auxiliary aids and services include, but are not limited to, "screen reader software; magnification software; optical readers; . . . accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." *Id.* § 35.104.

102.    Because they are blind, Daniel Frye, Mary Jean Shiner, and other NFB and NFB-NH members are individuals with disabilities protected by the ADA. Because he has Muscular Dystrophy, Jeffrey Dickinson is an individual with a disability protected by the ADA. Because of their disabilities, GSIL clients are individuals with disabilities protected by the ADA. *See* 42 U.S.C. § 12102; 28 C.F.R. § 35.108.

103.    Daniel Frye, Mary Jean Shiner, Jeffrey Dickinson, NFB and NFB-NH members, and GSIL clients are eligible to vote in New Hampshire and intend to vote in the September 8, 2020 primary election, November 3, 2020 general election, and other future elections. Daniel

Frye, Mary Jean Shiner, Jeffrey Dickinson, NFB and NFB-NH members, and GSIL clients are qualified to receive voting services from Defendants and are entitled to the protections afforded under the ADA. *See* 42 U.S.C. § 12131(2).

104.    Defendant Gardner heads the New Hampshire Department of State. The New Hampshire Department of State is a public entity subject to Title II of the ADA. *See* 42 U.S.C. § 12131(1).

105.    The absentee voting program is a service, program, or activity provided by Defendants.

106.    Defendants' absentee voting program discriminates against Plaintiffs and other print-disabled voters because these individuals cannot register to vote absentee, apply for an absentee ballot, or vote via absentee ballot secretly and independently, as other voters can.

107.    Defendants have also discriminated against Plaintiffs and other print-disabled voters by failing to make the instructions on their website for voting during the pandemic accessible.

108.    Defendants have failed to provide Plaintiffs and other print-disabled voters with an opportunity to participate in New Hampshire's absentee voting program that is equal to the opportunity provided to other voters who do not have disabilities.

109.    Defendants could make reasonable modifications to their absentee voting program by offering an accessible means of absentee registration and voting to Plaintiffs and other voters who are print-disabled.

110.    Defendants have failed to afford Plaintiffs and other print-disabled voters auxiliary aids and services necessary to afford them effective communication in the absentee voting program.

111.    Defendants have excluded and continue to exclude Plaintiffs and other voters who are print disabled from participation in, and denied them the benefits of, or otherwise discriminated against them in, their absentee voting program.

112.    As a result of Defendants' actions and inactions, Plaintiffs and those similarly situated have suffered and will continue to suffer irreparable harm. They have suffered and continue to suffer from discrimination and unequal access to Defendants' programs, services, or activities. And in the absence of injunctive relief, Plaintiffs and those similarly situated will be denied their right to register and vote by absentee ballot privately and independently.

113.    In light of COVID-19 and the rapidly approaching election in September, Plaintiffs and other print-disabled voters are at imminent risk of irreparable harm absent injunctive relief that would make New Hampshire's absentee voting program accessible in time for the September 8, 2020 primary. Many print-disabled individuals do not have assistance in their homes to complete paper forms and ballots and cannot seek assistance or vote in person due to fears for their health. For that reason, Defendants' actions and inactions may prevent such individuals from voting in the upcoming primary.

114.    Because of Defendants' intransigence, Plaintiffs and other print-disabled individuals will face the unconscionable choice of either leaving their homes to vote in person—thereby facing the threat of severe illness or death—or staying home and forgoing the right to vote privately and independently (if third-party assistance is available), or the right to vote entirely (if it is not).

115.    Defendants' failure to meet their obligations to provide disabled voters with an equal opportunity to participate in their absentee voting program is an ongoing violation of the ADA and its implementing regulations. Unless restrained from doing so, Defendants will

continue to violate the ADA and to inflict irreparable injuries for which Plaintiffs have no adequate remedy at law.

116.    Plaintiffs are entitled to injunctive relief, including the requested preliminary injunction, as well as reasonable attorneys' fees and costs.

### COUNT II
### Violation of Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 794 *et seq.*

117.    Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

118.    Plaintiffs Daniel Frye, Mary Jean Shiner, Jeffrey Dickinson, NFB and NFB-NH members, and GSIL clients are individuals with disabilities who are eligible to vote and, thus, are protected by Section 504. The Department of State receives federal financial assistance and thus is subject to Section 504. 29 U.S.C. § 794.

119.    Section 504 mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." *Id.* § 794(a).

120.    Section 504 defines "program or activity" to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government" or "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" *Id.* § 794(b)(1).

121.    Such federally funded entities may not, in providing aids, benefits, or services, "[d]eny a qualified handicapped person the opportunity accorded others to participate in the

25

program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(b)(1)(i).

122.    Such federally funded entities must also "insure that communications with their
. . . beneficiaries are effectively conveyed to those having impaired vision and hearing," *id.*
§ 42.503(e), and, if the entity has 15 or more employees, must "provide appropriate auxiliary
aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a
refusal to make such provision would discriminatorily impair or exclude the participation of such
persons in a program or activity receiving Federal financial assistance," *id.* § 42.503(f).

123.    Defendant Gardner is the Secretary of the New Hampshire Department of State,
which is an agency or instrumentality of New Hampshire that receives federal financial
assistance and thereby is subject to the requirements of Section 504.

124.    The absentee voting program is a service, program, or activity provided by
Defendants.

125.    Plaintiffs are people with disabilities under Section 504.

126.    Plaintiffs are eligible to vote in New Hampshire and are thus qualified individuals
with disabilities entitled to the protections of Section 504.

127.    Defendants have failed and continue to fail to meet their obligations to provide
print-disabled voters an opportunity to register to vote and to vote that is equal to the opportunity
provided to other voters.

128.    In denying use of an accessible absentee voting program and in communicating
election instructions in inaccessible formats, Defendants refuse to provide an auxiliary aid or
service that would allow Plaintiffs an equal opportunity to vote.

129.    Accordingly, Defendants have discriminated and continue to discriminate against
Plaintiffs with respect to their absentee voting program.

130. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm; they have suffered and continue to suffer from discrimination and unequal access to Defendants' absentee voting program.

131. The technology to make their absentee voting program accessible is readily available to Defendants and would allow independent, private absentee registration and voting for print-disabled people.

132. In the absence of injunctive relief, including a preliminary injunction, Defendants will continue to deny Plaintiffs their right to participate in their absentee voting program privately and independently in the September 8, 2020 primary election, the November 3, 2020 general election, and in future elections.

133. Unless the requested relief is granted, Plaintiffs will suffer irreparable harm in that they will be discriminated against and denied equal access to the fundamental right to vote.

134. Plaintiffs are entitled to injunctive relief, including a preliminary injunction, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and award them the following relief:

135. A preliminary injunction prohibiting Defendants from violating the ADA and Section 504 and requiring Defendants to temporarily remedy their absentee voting program by allowing voters to register through an entirely online process; ensuring that all election-related guidance posted on Defendants' website is accessible; and implementing a remote vote-by-mail system accessible to Plaintiffs and those similarly situated in time for the September 8, 2020 primary election;

136.    A permanent injunction prohibiting Defendants from violating the ADA and Section 504 and requiring Defendants to remedy their absentee voting program by allowing voters who qualify for absentee registration to register through an entirely online process; ensuring that all election-related guidance posted on Defendants' website is accessible; and implementing a remote accessible vote-by-mail system for Plaintiffs and those similarly situated for all future elections;

137.    A declaration that Defendants have and continue to violate the ADA and Section 504;

138.    An award of Plaintiffs' reasonable attorneys' fees, litigation expenses, and costs; and

139.    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DISABILITY RIGHTS CENTER-
NEW HAMPSHIRE, INC.

Date: July 7, 2020            By:   /S/ *Pamela E. Phelan*
                                     Pamela E. Phelan (#10089)
                                     Pamelap@drcnh.org
                                     (603) 491-4157 (mobile number)
                                     James Ziegra (#20689)
                                     jamesz@drcnh.org
                                     (603) 661-7314 (mobile number)
                                     64 North Main Street, Ste. 2
                                     Concord, NH 03301
                                     (603) 228-0432 (general office number)
                                     (603) 225-2077 (general office fax number)

Gregory P. Care (*pro hac vice* pending)
gpc@browngold.com
(443) 534-5641 (mobile number)
Abigail A. Graber (*pro hac vice* pending)
agraber@browngold.com
(410) 215-0110 (mobile number)
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
(410) 962-1030 (general office number)
(410) 385-0869 (general office fax number)

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a copy of this Motion and accompanying Affidavit was forwarded by first-class mail and e-mail to Gordon MacDonald, Esq. (Gordon.macdonald@doj.nh.gov), and Anthony Galdieri, Esq. (Anthony.galdieri@doj.nh.gov), at the New Hampshire Attorney General's Office, 33 Capitol Street, Concord, New Hampshire 03301.

Dated:  July 7, 2020                    /S/ *Pamela E. Phelan*
                                        Pamela E. Phelan