**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

***********************************
Daniel Frye, et al., *
*
Plaintiffs, *
v. * Case No. 1:20-cv-00751-SM
*
William M. Gardner et al., *
*
Defendants. *
*
***********************************

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

The defendants, William M. Gardner, in his official capacity as New Hampshire Secretary of State, and the New Hampshire Department of State, respectfully submit this memorandum of law in support of their motion to dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on all counts in the plaintiffs' complaint.

**PRELIMINARY STATEMENT**

On July 7, 2020, the plaintiffs filed this lawsuit under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act seeking declaratory relief and a permanent injunction that would require the defendants to (1) allow blind and print-disabled voters who qualify for absentee registration to register to vote through an electronic process; (2) ensure that all election-related guidance posted on the defendants' website is accessible; and (3) implement a remote accessible vote-by-mail system for blind and print-disabled absentee voters for the September 2020 state primary election, the November 2020 general election, and future elections. Yet even before the plaintiffs filed suit, the defendants were already in the process of revamping their website to make it accessible and ADA-compliant, and they were already exploring and pursuing

a remote accessible vote-by-mail system for use by blind and print-disabled absentee voters. These and other efforts continued over the weeks that followed the filing of the plaintiffs' complaint and, by the end of August of 2020, the defendants had successfully implemented all the relief that the plaintiffs requested in this case. As such, there is no justiciable controversy left for the Court to decide in this case, and it should be dismissed as moot.

In the spring and summer of 2020, the plaintiff National Federation of the Blind and its affiliates filed lawsuits like this one in states across the country. And this case followed a pattern that, in some respects, is similar to the one litigated in Pennsylvania. *See Drenth v. Boockvar*, Civil No. 1:20-CV-00829, 2020 WL 4805621 (M.D. Pa. Aug. 18, 2020). In *Drenth*, the plaintiffs sought an injunction requiring the Pennsylvania Secretary of the Commonwealth to remedy the State's "absentee and mail-in ballot system by implementing a remote accessible vote-by-mail system for Plaintiffs and those similarly situated for all future elections." *Id.* at *5 (internal quotations omitted). Subsequent to the filing of the complaint, the Secretary of the Commonwealth "finalized an agreement for a remote ballot marking system." *Id.* The defendants then moved for summary judgment on mootness grounds, at a time when the Secretary of the Commonwealth was in the process of "implementing the requested vote-by-mail system," and had indicated that the system "will be in use for the November 2020 general election." *Id.* at *3, *5. The Secretary of the Commonwealth's contract with the third-party vendor providing the accessible vote-by-mail system was "for an annual service period" and provided for "annual renewals." *Id.* at *3. On these facts, the court concluded that "any injunctive relief ordered by the court would simply order Defendants to do exactly what they are already doing," and dismissed the case as moot. *Id.* at *5 (internal quotations omitted). For these reasons, and the reasons explained in greater detail below, this Court should do the same.

## ALLEGATIONS OF THE COMPLAINT AND RELEVANT BACKGROUND

### I. The Plaintiffs' Complaint

The plaintiffs—three blind New Hampshire voters, the National Federation of the Blind, Inc. and its New Hampshire-based affiliate, and Granite State Independent Living, a corporation that operates an independent living center that serves persons with disabilities—commenced this action on July 7, 2020. ECF Doc. No. 1 ("Compl.") ¶¶ 1, 14-20. The plaintiffs allege a violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134 (Count I), and a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.* (Count II). Their complaint alleges that the defendants have not provided voters with print disabilities "equal access to vote absentee independently and privately in all elections" due to the inability of such voters to register to vote through an electronic process or to use an electronic ballot-marking system to fill out their ballots. Compl. ¶¶ 10, 77-86. According to the plaintiffs, their claims were made more urgent by the COVID-19 pandemic because the available absentee voting procedures placed them in "an impossible bind" of either "forfeit[ing] their right to vote privately and independently" or "risk[ing] their health and the health of their loved ones by voting in person." Compl. ¶ 8.

The plaintiffs seek relief in the form of a permanent injunction "requiring Defendants to remedy their absentee voting program by [1] allowing voters who qualify for absentee registration to register through an entirely online process; [2] ensuring that all election-related guidance posted on Defendants' website is accessible; and [3] implementing a remote accessible vote-by-mail system for Plaintiffs and those similarly situated for all future elections." Compl. ¶ 136. They also seek a declaration that the defendants are in violation of the ADA and Section 504, as well as an award of attorneys' fees, costs, and expenses. Compl. ¶¶ 137-38.

The plaintiffs' claims are based on the following factual allegations. First, with respect to their challenge to the process by which print-disabled voters may register to vote, the plaintiffs take issue with the fact that the defendants' voter registration form is "not available online" and is "not available in a fully accessible format." Compl. ¶ 67. They also take issue with "[t]he form affidavit for voters registering absentee because of physical disability" due to the fact that "it is not available as an electronic fillable form that can be read and completed by a blind person using a screen-reader, and it must be signed by hand." Compl. ¶ 66.

Second, the plaintiffs challenge the accessibility of election-related guidance on the defendants' website in three respects: (1) "[n]ew guidance issued by the Secretary of State related to voting during the pandemic is inaccessible to individuals using screen-reading software," Compl. ¶ 64; (2) "the website the Secretary of State has established for voting during the pandemic, http://sos.nh.gov/VotingEmergency.aspx, is not fully accessible to people using a screen-reader," Compl. ¶ 65; and (3) the Application for State Election Absentee Ballot is inaccessible because it must be "signed by hand," Compl. ¶ 68.

Third, with respect to their challenge to the accessibility of the process by which print-disabled voters must obtain and fill out an absentee ballot, the plaintiffs take issue with the defendants' failure to implement an electronic ballot-marking system. The plaintiffs state that the defendants could remedy this alleged deficiency by implementing an "online or electronic ballot marking system[]," which could be provided by various third-party vendors, including a company known as VotingWorks by Enhanced Voting. Compl. ¶ 78. According to the plaintiffs, any accessibility problems with the forms that are needed to support such a system could be corrected by providing them in "accessible, fillable PDFs and allow[ing] applicants to use electronic signatures and submit the forms over email." Compl. ¶ 80.

## II. The Parties' Term Sheet Resolving the Plaintiffs' Motion for a Preliminary Injunction

On the same day that the plaintiffs filed their complaint in this case, they also filed a motion for a preliminary injunction, seeking the same relief as in their permanent injunction specifically with respect to the September 8, 2020 state primary election and the November 3, 2020 general election. ECF Doc. No. 7. By the time of the plaintiffs' filing, the defendants were already in the process of actively addressing the plaintiffs' concerns about the accessibility of the absentee voting process and the voting-related guidance on the defendants' website. *See, e.g.*, ECF Doc. No. 23-2 ("Deputy Scanlan Decl.") ¶¶ 17-36, 62.[1] And, over the course of the roughly seven weeks that followed the filing of this action, the defendants fully addressed all of the accessibility issues raised in the plaintiffs' complaint. The defendants' actions, and their commitment to an absentee voting program that is accessible to New Hampshire voters with print disabilities, were memorialized in a Final Term Sheet that was filed with this Court. ECF Doc. No. 29-1. The parties executed the Final Term Sheet on August 28, 2020, which prompted the withdrawal of the plaintiffs' preliminary injunction motion. ECF Doc. Nos. 29, 29-1.

Pursuant to the terms of the Final Term Sheet, the defendants agreed to modify their Absentee Voting Program[2] in a manner that made it accessible to persons who are blind or have print disabilities and implement that process in advance of the September 8, 2020 state primary. ECF Doc. No. 29-1 at 2. To this end, on or about August 20, 2020, the defendants entered into a contract with a third-party vendor, VotingWorks, to implement a remote accessible vote-by-mail

---

[1] Citations to "Deputy Scanlan Decl." are to the previously-submitted Declaration of Deputy Secretary of State David Scanlan in Support of the Defendants' Objection to the Plaintiffs' Motion for a Preliminary Injunction. ECF Doc. No. 23-2.

[2] In the Final Term Sheet, the Absentee Voting Program was defined to include: (a) the provision of information about New Hampshire elections to voters; (b) absentee voter registration; and (c) the processes for New Hampshire voters to request, receive, mark, and submit absentee ballots. ECF Doc. No. 29-1 at 2.

(RAVBM) system for the September 8, 2020 primary election and the November 3, 2020 general election. ECF Doc. No. 29-1 at 2-3. The VotingWorks RAVBM system was in place in advance of the September 8, 2020 primary election and, as the plaintiffs acknowledge, it "allows individuals who are blind or have other Print Disabilities to participate in absentee voting privately and independently without relying on others to assist them and with ease of access similar to the experience of nondisabled voters." ECF Doc. No. 29-1 at 2. The defendants also made available the "forms and guidance documents necessary to obtain an electronic ballot through the RAVBM system" in accessible formats on the defendants' website.[3] ECF Doc. No. 29-1 at 3.

In addition, the defendants agreed to "make certain electronically available information that is part of the Absentee Voting Program—certain website pages, certain guidance related to the Absentee Voting Program, and certain forms related to the Absentee Voting Program—accessible to persons who are blind or have other Print Disabilities in advance of the September 8, 2020 state primary and to maintain it in Accessible formats." ECF Doc. No. 29-1 at 3. The defendants further agreed to "make all necessary forms for registering to vote, requesting an absentee ballot and marking and returning an absentee ballot, and all related guidance and instruction documents in a format that is Accessible to and fillable by those with Print Disabilities [in conformance with the prevailing standards on website accessibility] on or before August 28, 2020." ECF Doc. No. 29-1 at 3. The defendants also agreed to "accept electronic signatures on such documents as need to be signed and so inform voters." ECF Doc. No. 29-1 at

[3] In New Hampshire, local election officials are responsible for conducting elections at the polling place. Although the plaintiffs did not ask for any such relief in their complaint, the defendants also notified and provided guidance to local election officials about the VotingWorks RAVBM system and the proper tabulation of ballots received from absentee voters who were qualified to use the RAVBM system. ECF Doc. No. 29-1 at 3.

3. Following the execution of the Final Term Sheet, the plaintiffs withdrew their motion for a preliminary injunction. ECF Doc. No. 29.

## STANDARD OF REVIEW

Justiciability, including mootness, is a question of subject-matter jurisdiction. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362-63 (1st Cir. 2001). "The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)." *Id.* at 362. Challenges to subject-matter jurisdiction under Rule 12(b)(1) come in two forms: sufficiency challenges and factual challenges. *Id.* at 363-64. Here, the defendants advance a factual challenge. A factual challenge "controvert[s] the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff," and allows the defendant to "proffer[] materials of evidentiary quality in support of that position." *Id.* at 363. In this type of challenge, "the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Id.* "In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Id.* (footnote and citation omitted).

## ARGUMENT

### I. The plaintiffs' claims are moot.

"The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.'" *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops ("ACLU")*, 705 F.3d 44, 52 (1st Cir. 2013) (quoting *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003)). The First Circuit has explained the mootness doctrine as follows:

> Simply stated, a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. Another way of putting this is that a case is moot when the court cannot give any "effectual relief" to the potentially prevailing party. And, if events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case.

*Id.* at 52-53 (internal quotations, bracketing, and citations omitted); *see Davidson v. Howe*, 749 F.3d 21, 26 (1st Cir. 2014); *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 16 (1st Cir. 2004).

The party invoking the mootness doctrine bears the burden of establishing that the case is moot. *ACLU*, 705 F.3d at 52. "To satisfy this burden, the challenger must show that, after the case's commencement, intervening events have blotted out the alleged injury and established that the conduct complained of cannot reasonably be expected to recur." *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006). "If it is sufficiently plain that intervening events have wiped the slate clean, the case has become moot." *Id.*

Here, intervening events have wiped the slate clean, and this case no longer presents a live controversy. As set forth above, the defendants addressed all of the accessibility issues raised in the complaint in advance of the September 8, 2020 primary election, and the plaintiffs have thus effectively obtained each of the three categories of relief sought in their complaint.

First, the plaintiffs requested an electronic voter registration process for voters who are blind or have another print disability. This request is resolved: The defendants agreed to modify absentee voter registration in a manner that makes it accessible to persons who are blind or have other print disabilities, and they have. ECF Doc. No. 29-1 at 2-3; *see* Deputy Scanlan Decl. ¶¶ 59-60 (explaining the process by which voters who are blind or have other print-based disabilities may register to vote electronically). And, the defendants have made accessible all necessary forms for registering to vote, and they have agreed to accept electronic signatures on

such documents as need to be signed by such voters. ECF Doc. No. 29-1 at 2-3; *see* Deputy Scanlan Decl. ¶ 59.

Second, the plaintiffs requested that the election-related guidance posted on the defendants' website be accessible. This request is resolved: The defendants' website has been entirely revamped and is now accessible. Deputy Scanlan Decl. ¶ 62. The defendants have made electronically available information that is part of their absentee voting program, including the website pages, guidance, and forms identified in the plaintiffs' complaint, *see* Compl. ¶¶ 64, 65, 68, accessible to persons who are blind or have other print disabilities. ECF Doc. No. 29-1 at 2-3.

Third, the plaintiffs requested the implementation of a remote accessible vote-by-mail system for use by voters who are blind or have other print disabilities. This request is resolved: The defendants entered an agreement with VotingWorks to implement the RAVBM system, which was in place for the September 8, 2020 primary election and will be in place for the November 3, 2020 general election. ECF Doc. No. 29-1 at 3. Under these circumstances, "any injunctive relief ordered by the court would simply order [the defendants] to do exactly what they are already doing" or have already done. *Drenth*, 2020 WL 4805621, at *5 (internal quotations omitted). Accordingly, there is no live controversy left for this Court to adjudicate, and the plaintiffs' request for a permanent injunction is moot. *See ACLU*, 705 F.3d at 52-53.

In short, every request for affirmative relief contained in the plaintiffs' complaint has been resolved, leaving no controversy and no relief left to award.

As indicated above, in addition to seeking a permanent injunction, the plaintiffs' complaint also contains requests for declaratory relief and an award of fees and costs. Those requests are also moot. The general rule is that "a declaratory judgment deeming past conduct

illegal is also not permissible as it would be merely advisory." *Id.* at 53. "For declaratory relief to withstand a mootness challenge, the facts alleged must 'show that there is a substantial controversy . . . *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*.'" *Id.* at 53-54 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)); *cf. New Eng. Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002) (observing that it would be "pointless" to declare the unconstitutional status of a regulation that is no longer in effect). For the reasons explained above, there is no controversy left to adjudicate in this case, let alone a controversy that is substantial, immediate, and real. Accordingly, the plaintiffs' request for declaratory relief is also properly dismissed as moot.

The plaintiffs' request for an award of attorneys' fees and costs is also moot. In ADA cases, "[a] litigant's interest in a possible award of attorneys' fees is not enough to create a justiciable case or controversy if none exists on the merits of the underlying claim." *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 51 (1st Cir. 2006); *see Theodore v. 99 Rests., LLC*, Case No. 18-cv-368-SM, 2019 WL 4861201, at *7 (D.N.H. Oct. 2, 2019) ("[P]laintiffs seem, albeit implicitly, to acknowledge that the mere fact that defendants brought their restaurant into compliance with the ADA in response to plaintiffs' complaint is not sufficient, standing alone, to warrant an award of attorney's fees."). Moreover, an award of attorneys' fees in a case brought under Title II of the ADA requires prevailing-party status, which can be shown "only where the party had received a judgment on the merits or obtained a favorable court-sanctioned consent decree." *Sinapi v. R.I. Bd. of Bar Exam'rs*, 910 F.3d 544, 551 (1st Cir. 2018); *cf. CRST Van Expedited, Inc. v. Equal Emp't Opportunity Comm'n*, 136 S. Ct. 1642, 1653 (2016) (recognizing that the *defendants* may recover their attorneys' fees in ADA cases where the plaintiff continues to litigate a case that has become moot). Here, because the underlying merits of the plaintiffs' claims have been rendered

moot, and because the plaintiffs obtained neither a favorable judgment on the merits nor a court-sanctioned consent decree, their request for an award of attorneys' fees is also moot.

## II. The voluntary cessation doctrine does not apply in this case.

The plaintiffs previously have alluded to an argument that the defendants' implementation of the relief sought in the plaintiffs' complaint in advance of the September 8, 2020 primary election would not render this case moot. *See, e.g.*, ECF Doc. No. 25 at 1-2. To support that proposition, the plaintiffs rely on the voluntary cessation doctrine, which is an exception to mootness.

"The voluntary cessation exception 'traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'" *ACLU*, 705 F.3d at 54 (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001)). "This is to avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Id.* at 54-55. "[E]ven in circumstances where the voluntary cessation exception applies, a case may still be found moot if the defendant meets 'the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* at 55 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000)).

In this case, the voluntary cessation exception does not apply for at least two reasons. First, the exception does not apply where the defendants' voluntary cessation began before the plaintiffs filed suit. *See id.* at 55; *Drenth*, 2020 WL 4805621, at *6. Here, the record reflects that the defendants were in the process of addressing certain alleged deficiencies with the accessibility of absentee voting in New Hampshire before the plaintiffs filed this lawsuit.

Deputy Scanlan Decl. ¶¶ 17-36, 62. Thus, there is nothing to suggest that the defendants voluntarily modified their absentee voting program for any reason other than to expand accessible voting opportunities for voters with print disabilities who are legally entitled to vote by absentee, let alone that they did so in order to temporarily alter past practices and immunize themselves from this lawsuit. For this reason alone, the voluntary cessation doctrine does not apply in this case.

Second, there is nothing to suggest that there is "some reasonable expectation of recurrences of the challenged conduct." *ACLU*, 705 F.3d at 55-56 ("Under circuit precedent, the voluntary cessation exception can be triggered only when there is a reasonable expectation that the challenged conduct will be repeated following dismissal of the case."). The defendants have by now devoted significant time, money, and other resources toward implementing the modifications to their absentee voting program discussed above. They updated their forms and guidance. They made all election-related guidance on their new website accessible. They modified their absentee voter registration procedures for voters with print disabilities giving them an entirely electronic option. They retained VotingWorks to implement the RAVBM system, and it was in place for the September 8, 2020 election. They then provided local election officials with guidance on these changes and updated procedures and have publicized them. And they did all of this in the midst of a global pandemic while preparing for a major election. On these facts, the court can "safely assume that for the foreseeable future the challenged [practices] will not recur." *Id.* at 56.

As a final matter, it bears emphasis that the defendants are government officials, which also militates against applying the voluntary cessation exception in this case. The First Circuit has recognized that "some weight" in the analysis should be given to the fact that the defendants

are government officials who have modified a prior practice and adopted a replacement that conforms to the applicable law. *Id.* at 56; *see also Sossamon v. Lone Star State of Texas,* 560 F.3d 316, 325 (5th Cir. 2009) ("We will not require some physical or logical impossibility that the challenged policy will be reenacted absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct."); *Chihuahuan Grasslands All. v. Kempthorne,* 545 F.3d 884, 893 (10th Cir. 2008) ("Nothing in the record presented to us indicates the [Bureau of Land Management's] termination of the leases at issue constitutes a 'voluntary cessation' of illegal conduct made in an effort to evade judicial review or avoid judgment by temporarily altering questionable behavior."); *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("When government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit."). For all these reasons, the voluntary cessation doctrine does not apply.

## CONCLUSION

Based on the foregoing, the defendants respectfully submit that their motion to dismiss should be granted and this case dismissed as moot.

Respectfully submitted,

William M. Gardner, Secretary of State, and the
New Hampshire Department of State

By their attorney,

GORDON J. MACDONALD
ATTORNEY GENERAL

Dated: September 22, 2020

/s/ Seth M. Zoracki
Anthony J. Galdieri, Bar #18594
Senior Assistant Attorney General
Seth M. Zoracki, Bar #267887
Assistant Attorney General
Samuel R.V. Garland, Bar #266273

Assistant Attorney General
Civil Bureau
(603) 271-3650
anthony.galdieri@doj.nh.gov
seth.zoracki@doj.nh.gov
samuel.garland@doj.nh.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record through the Court's ECF system.

/s/ Seth M. Zoracki