UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Daniel Frye; Mary Jean Shiner;
Jeffrey J. Dickinson; National
Federation of the Blind, Inc.;
National Federation of the Blind
of New Hampshire, Inc.; and
Granite State Independent Living,
    Plaintiffs

    v.                             Case No. 20-cv-751-SM
                                        Opinion No. 2020 DNH 213

William M. Gardner, Secretary
Of State of New Hampshire; and
The New Hampshire Department of State,
    Defendants


**O R D E R**


Plaintiffs brought this action against the State of New Hampshire seeking declaratory and injunctive relief under the Americans with Disabilities Act and the Rehabilitation Act. Broadly stated, plaintiffs claim New Hampshire's absentee voting program is not adequately accessible to blind and print-disabled citizens. The State asserts that even before plaintiffs' suit, it was diligently working to address the issues raised in their complaint. And, says the State, it has successfully implemented all the relief that plaintiffs requested in that complaint. Accordingly, it says there is no longer any justiciable

controversy for the court to resolve and plaintiffs' complaint
should be dismissed as moot.  Plaintiffs object and have also
filed an amended complaint, in which they advance new (but
related) claims that they say are not moot.  In response, the
State has moved to strike plaintiffs' amended complaint,
asserting that once the case became moot, subject matter
jurisdiction was lost and, consequently, the court lacked the
authority to entertain any amendments to plaintiffs' complaint.

    For the reasons discussed, the State's motion to dismiss is
denied, as is its motion to strike the amended complaint.

### Standard of Review

    The State moves to dismiss on grounds that the court lacks
subject matter jurisdiction, asserting that all claims advanced
in plaintiffs' original complaint are moot.  See Fed. R. Civ. P.
12(b)(1).  See also Valentin v. Hosp. Bella Vista, 254 F.3d 358,
362 (1st Cir. 2001) ("The proper vehicle for challenging a
court's subject-matter jurisdiction is Federal Rule of Civil
Procedure 12(b)(1)").

    As the Valentin court observed, there are two means by
which a defendant may challenge the court's subject matter
jurisdiction:

The first way is to mount a challenge which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction.  In performing this task, the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly.  For ease in classification, we shall call this type of challenge a "sufficiency challenge."

The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position.  Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1) — which we shall call a "factual challenge" — permits (indeed, demands) differential factfinding.  Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties.  In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.

Id. at 363 (citations omitted; emphasis supplied).  Here, the

State invokes the latter of those two avenues, asserting a

factual challenge to the ongoing viability of plaintiffs' claims

– that is, the State says the facts pled in the complaint have

changed, plaintiffs' claims have been resolved, and they are now

moot.

**Background**

As a result of the global pandemic caused by the SARS-Cov-2 virus, New Hampshire expanded access to its absentee registration and voting process to all voters.  But, say plaintiffs, that "absentee voting program (including absentee registration, application for an absentee ballot, and the absentee ballots themselves) is inaccessible to them" because they are blind or have other print disabilities.  Complaint (document no. 1) at 2.  Plaintiffs allege that:

> New Hampshire's absentee voting program relies on printed forms and ballots that print-disabled voters cannot read or mark independently.  New Hampshire does not offer an accessible, electronic means of obtaining voting information and an absentee ballot, much less accessible, electronic absentee ballot marking.
>
> * * *
>
> One barrier to voting for people with disabilities is New Hampshire's reliance on exclusively paper forms and ballots for absentee voting, which prevents people who have print disabilities from casting a private vote.
>
> New Hampshire's absentee ballot system places Plaintiffs in an impossible bind.  Plaintiffs must either: a) forfeit their right to vote privately and independently, or b) risk their health and the health of their loved ones by voting in person.

Id. at 3-4.

In anticipation of the September 8, 2020, primary election, plaintiffs brought this action seeking injunctive and declaratory relief.  They advance two nearly identical claims: the first under the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, and the second under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq.  In each, they assert that they are qualified individuals with a disability who are wrongfully being denied both the opportunity to register to vote, as well as the opportunity to vote, that is substantially equal to those of non-disabled individuals.  Plaintiffs seek temporary and permanent injunctive relief "requiring Defendants to remedy their absentee voting program by" modifying the State's absentee voting system in three ways:

(1)  allowing voters who qualify for absentee registration to register through an entirely online process; and

(2)  ensuring that all election-related guidance posted on Defendants' website is accessible; and

(3)  implementing a remote accessible vote-by-mail system for Plaintiffs and those similarly situated for all future elections.

See Complaint at para. 136 ("Prayer for Relief").

For its part, the State says it had already been working to make its website and its absentee voting system accessible to

blind and print-disabled individuals for many months – beginning
well before plaintiffs filed their suit.  A timeline and
detailed recounting of the State's efforts are set forth in the
affidavit of Deputy Secretary of State David Scanlan (document
no. 23-2).  On August 28, 2020, the parties memorialized the
State's ongoing efforts, as well as its commitment to providing
an absentee voting program that is accessible to individuals
with print disabilities, in a "Final Term Sheet" (document no.
29).  Satisfied with the State's progress and its commitment to
implement the changes plaintiffs requested, plaintiffs withdrew
their request for preliminary injunctive relief.

Under the terms of the Final Term Sheet, the State agreed
to modify its absentee voting program in a manner that would
make it accessible to individuals who are blind or have print
disabilities prior to the September 8, 2020, state primary
election.  Id. at 2-4.  On August 20, 2020, the State entered
into a contract with a third-party vendor, VotingWorks, to
implement an absentee voting system that would be accessible to
plaintiffs for that primary election as well as the November 3
general election.  Then, in advance of the September 8 election,

VotingWorks put in place its "Remote Accessible Vote-By-Mail" System ("RAVBM").[1]

The State also asserts that it has made all the requested changes to its voter information website, thereby making it accessible to blind and print-disabled individuals.  See Memorandum in Support of Motion to Dismiss (document no. 32-1) at 5 ("[O]ver the course of the roughly seven weeks that followed the filing of this action, the defendants fully addressed all of the accessibility issues raised in the plaintiffs' complaint.").  Consequently, says the State, it has not only met all its obligations under the Final Term Sheet, but it has also "addressed all of the accessibility issues raised in the complaint in advance of the September 8, 2020 primary election, and the plaintiffs have thus effectively obtained each of the three categories of relief sought in their complaint." Id. at 8.  Those actions, says the State, render plaintiffs' claims moot and mean that this case no longer presents a live, justiciable controversy.

---

[1]     In their Final Term Sheet, the parties agreed that an RAVBM system is "a program or system that allows individuals who are blind or have other print disabilities to participate in absentee voting privately and independently without relying on others to assist them and with ease of access similar to the experience of nondisabled voters."  Id. at 2.

**Discussion**

I.   <u>Plaintiffs' Arguments in Opposition</u>.

As noted above, plaintiffs seek injunctive relief compelling the State to modify its website and absentee voting system in three ways that: (1) allow voters who qualify for absentee registration to <u>register</u> through an entirely <u>online</u> process; and (2) ensure that all election-related guidance posted on <u>Defendants' website is accessible</u>; and (3) <u>implement</u> a <u>remote accessible vote-by-mail system</u> (RAVBM) for plaintiffs and those similarly situated for all future elections.  Complaint at para. 136 ("Prayer for Relief").

A.   <u>Fairly Reading the Complaint</u>.

In opposition to the State's motion to dismiss, plaintiffs say the State has read their complaint too narrowly and their agreement with the State (as embodied in the "Final Term Sheet") did not resolve all of their claims.  So, for example, plaintiffs say that while it is not a part of their prayer for injunctive or declaratory relief, they do allege in their complaint that "[t]echnology is available and in use across the country that allows voters with disabilities to register to vote and request, receive, fill out, and even <u>return their absentee ballots electronically</u>, <u>id</u>. at para. 77 (emphasis supplied), and that "[a]s of September 2019, nearly half of states allowed

electronic return of ballots in at least some circumstances, id.
at para. 85 (emphasis supplied).  Fairly read as a whole, say
plaintiffs, the complaint adequately notified the State that
plaintiffs were also seeking the ability to return their
completed absentee ballots electronically (something that, for
security reasons, among others, the State has not agreed to
provide).  Thus, say plaintiffs, not all of their claims have
been resolved and this remains a live, justiciable controversy.

Plaintiffs are mistaken.  Two passing references to
available technology that some, but not all, other states employ
is hardly sufficient to put the State on notice that plaintiffs
were demanding such an accommodation.  Indeed, the Final Term
Sheet expressly states that the modifications to the State's
registration and voting processes would "not include the
electronic return of a marked absentee ballot."  Final Term
Sheet, at para. 8.  And, as noted above, the ability to return
absentee ballots electronically (rather than through the mail)
was not included in plaintiffs' prayer for relief.

B.  Online Voter Registration.

As for their request that the State develop and online
electronic voter registration process for voters who are blind
or have print disabilities, plaintiffs do not dispute that the

State did implement such a system.  It was in place for both the primary and the general election.  As to that issue, there is no dispute that it has been resolved.

      C.    <u>Accessible Voting Guidance on State's Website</u>.

According to plaintiffs, "Defendants' efforts pursuant to the Term Sheet notwithstanding, they have not successfully made election-related information on their website accessible as Plaintiffs have demanded in this action."  Opposition Memorandum (document no. 35-1) at 9.  Specifically, plaintiffs say:

> Defendants' website allows voters to find the contact information for their clerk, check their party membership status, and check the status of their absentee ballot requests.  Blind voters cannot look up any of this information because they cannot get past these features' security function (known as a CAPTCHA, or Completely Automated Public Turing test to tell Computers and Humans Apart), which requires sight to enter a series of randomly generated characters displayed on the screen.  Low-vision voters will find issues with color contrast on these webpages.

Opposition Memorandum at 10 (citing plaintiffs' <u>amended</u> complaint at paras. 105-06).  But, as the State notes, those claims were not raised in plaintiffs' original complaint.  Indeed, that plaintiffs cite to their amended complaint to support those claims illustrates the State's point: those are <u>new</u> claims.  They were not fairly raised in the original

complaint, nor did the original complaint give the State adequate notice that plaintiffs were advancing such claims.

      D.    <u>Remote Access Vote-by-Mail System</u>.

Plaintiffs' final request was that the State implement a remote access vote-by-mail system, also known as an RAVBM. There is no dispute that the State implemented such a system and it was operational for both the primary and general elections.

II.  <u>Mootness and Justiciability</u>.

A case becomes moot and no longer presents a "case" or "controversy" for purposes of Article III when the issues presented by the plaintiff's complaint have been addressed or the underlying dispute has been resolved.  As the Supreme Court has noted:

> A case becomes moot — and therefore no longer a "Case" or "Controversy" for purposes of Article III - when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.

<u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 91 (2013) (citations and internal punctuation omitted).  Nevertheless, the Court has recognized that:

a defendant cannot automatically moot a case simply by
ending its unlawful conduct once sued.  Otherwise, a
defendant could engage in unlawful conduct, stop when
sued to have the case declared moot, then pick up
where he left off, repeating this cycle until he
achieves all his unlawful ends.  Given this concern,
our cases have explained that a defendant claiming
that its voluntary compliance moots a case bears the
formidable burden of showing that it is absolutely
clear the allegedly wrongful behavior could not
reasonably be expected to recur.

Id. (emphasis supplied).


Having remedied all alleged deficiencies in its website and

absentee voting procedures that were identified by plaintiffs,

the State urges the court to declare that plaintiffs' claims are

moot, strike the amended complaint, and dismiss the case.


The record before the court, as well as the arguments by

counsel, reveal that the claims advanced in plaintiffs' original

complaint have been resolved and they are now moot.  And, there

is no reasons to believe that, having made the substantial

investment of time and money to implement those changes, the

State will not keep them in place going forward.  See, e.g., Am.

Civil Liberties Union of Mass. v. U.S. Conference of Catholic

Bishops, 705 F.3d 44, 56 (1st Cir. 2013) ("Under circuit

precedent, the voluntary cessation exception can be triggered

only when there is a reasonable expectation that the challenged

conduct will be repeated following dismissal of the case.").

See generally LMG R.I. Holdings v. R.I. Sup. Ct., No. 18-cv-297-

SJM-AKJ (R.I.D. Dec. 21, 2018) (noting that once informed of the

law's requirements, state officials can be presumed to act in a

lawful manner and consistent with a court's direction)

(collecting cases).  Consequently, the court concludes that the

State has met its "formidable burden" of demonstrating that the

challenged conduct cannot reasonably be expected to recur.


     The only lingering question is whether plaintiffs had the

ability to amend their complaint to advance new, but related,

claims or whether, as the State urges, that amended complaint

must be stricken.


III. Amendment of the Original Complaint.

     On September 22, 2020, the State filed its motion to

dismiss plaintiffs' complaint as moot, noting that all alleged

defects identified in plaintiffs' complaint concerning New

Hampshire's voter registration process, its voter information

website, and its absentee voting system had been remedied.  At

that point, says the State, this case no longer presented a

judiciable controversy, plaintiffs' claims were moot, and the

court lacked subject matter jurisdiction.  In response, on

October 6, 2020, plaintiffs filed a timely amended complaint.

See generally Fed. R. Civ. P. 15(a)(1)(B).  In it, plaintiffs expanded upon the relief sought in their original complaint – that is, they included claims focused on the electronic return of completed ballots and other, previously unmentioned, aspects of the State's voter information website.

The State moves the court to strike or otherwise dismiss the amended complaint for lack of subject matter jurisdiction. In short, it says that plaintiffs "cannot avoid mootness by pleading what is effectively an entirely new lawsuit with entirely new claims."  Defendants' Motion to Strike (document no. 38) at para. 8.  "The Amended Complaint purports to amend a pleading over which this Court no longer possesses subject matter jurisdiction." Id. at para. 13.  Moreover, says the State, "the plaintiffs did not file their Amended Complaint until after the defendants moved to dismiss the original complaint on the basis of mootness.  Thus, even assuming an amendment as of right could cure mootness if filed before mootness was raised - a dubious proposition at best for the reasons already stated - no such circumstances exist in this case."  Id. at para. 14 (emphasis supplied).  In sum, says the State, "once this case became moot, the Court lacked jurisdiction to hear it, and Rule 15 cannot resurrect this action."  Id. at para. 11.  The Court disagrees.

In support of its position, the State points to several
cases in which plaintiffs were denied the opportunity to amend
their complaints after their claims were mooted.  See
Defendants' Motion to Strike at para. 9 (citing Fox v. Bd. Of
Trs. of State Univ. of N.Y., 42 F.3d 135 (2d Cir. 1994) and
Cicchetti v. Lucey, 514 F.2d 362 (1st Cir. 1975)).  The State
also cites to H.B. v. Byram Hills Cent. Sch. Dist., No. 14 CV
6796 VB, 2015 WL 5460023, at *5 (S.D.N.Y. July 20, 2015), for
the following proposition:

> When a court lacks subject matter jurisdiction over an
> action, it cannot grant leave to amend because "by
> definition . . . it is without power to act."  Fox v.
> Bd. of Trs. of State Univ. of New York, 148 F.R.D.
> 474, 487 n.30 (S.D.N.Y. 1993), aff'd 42 F.3d 135 (2d
> Cir. 1994); accord Pressroom Unions-Printers League
> Income Sec. Fund v. Cont'l Assur. Co., 700 F.2d 889,
> 894 (2d Cir. 1983) ("Because [he] was without
> jurisdiction, the judge appropriately denied the
> request to amend the complaint.").  Accordingly,
> because the Court lacks subject matter jurisdiction
> over this action, plaintiffs' motion for leave to
> amend the complaint must be denied.").

Id. at *5 (emphasis supplied).  Importantly, however, the cases
cited by the State involved situations in which plaintiffs were
required to seek and obtain leave of the court to amend; they
(unlike plaintiffs in this case ) no longer had the ability to
amend their complaint as a matter of right.

But, in an effort to diminish the significance of that distinction, the State asserts that "the cases the plaintiffs cite in support of the proposition that an amendment as of right is somehow different are readily distinguishable as they expressly contemplated circumstances in which the 'amended complaint became the operative pleading by operation of law before any jurisdictional challenge was mounted.'"  Defendants' Motion to Strike at para. 12 (quoting Connectu LLC v. Zukerberg, 522 F.3d 82, 95 (1st 2008)).  The State asserts that because it challenged the court's subject matter jurisdiction over plaintiffs' claims before plaintiffs amended their complaint, the court had already lost subject matter jurisdiction, that amendment was a nullity, and the case must be dismissed.

While the State's argument is facially appealing, it is inconsistent with the provisions of Fed. R. Civ. P. 15 – particularly the 2009 amendments to that rule.  The salient portions of Rule 15 provide as follows:

> **Amending as a Matter of Course.**  A party may amend its
> pleading once as a matter of course within:
>
> (A)  21 days after serving it, or
>
> (B)  . . . 21 days after service of a motion under
>       Rule 12(b), (e), or (f).

Fed. R. Civ. P. 15(a)(1)(A) and (B) (emphasis supplied).
Plainly, then, Rule 15 allows plaintiffs to amend their
complaints within 21 days after service of, among other things,
a motion to dismiss challenging the court's subject matter
jurisdiction.  <u>See generally</u>, Fed. R. Civ. P. 12(b)(1).  So,
even if a court lacks subject matter jurisdiction over a
plaintiff's original complaint <u>and</u> (as here) the defendant moves
to dismiss the complaint on that ground, the plaintiffs have 21
days within which to amend their complaint to state claims over
which the court <u>does</u> have jurisdiction.  <u>See generally</u> <u>Wagstaffe</u>
<u>Prac. Guide: Fed Civil Proc Before Trial</u> § 2.85 (2020) ("If
timely, a plaintiff can file an amended pleading in response to
a Rule 12(b)(1) motion.").  The lack (or loss) of subject matter
jurisdiction over the original complaint does not necessarily
compel dismissal of that complaint.  Nor does it preclude a
plaintiff from timely amending that complaint – even if that
amendment is made in response to a motion to dismiss for lack of
subject matter jurisdiction.

     Dicta in the court of appeals' decision in <u>Connectu</u>, with
its reference to the timing of a defendant's jurisdictional
challenge, predates the 2009 amendments to Rule 15 and,
therefore, does not control this situation.  So, for example,

17

the United States District Court for the Northern District of Florida recognized:

> Connectu is distinguishable . . . because there the court was construing the former Rule 15(a), in which the time for amending as of right terminated upon the filing of a responsive pleading.  Under the current rule, amendment of a complaint is permitted once as of right within 21 days after service of the responsive pleading, so the rule assumes a jurisdictional challenge might be made and subsequently corrected by substituting an amended complaint.  The language of the new rule is plain, and additionally, the notes accompanying the 2009 Amendments plainly state, "the right to amend once as a matter of course is no longer terminated by service of a responsive pleading."

Blue Marine Shipping SA de CV v. Gulmar Offshore Middle E. LLC, No. 309CV555/MCR/MD, 2010 WL 1687737, at *4 n.13 (N.D. Fla. Apr. 26, 2010) (emphasis supplied).

Plaintiffs amended their complaint as a matter of right, pursuant to Rule 15(a).  Consequently, the court's authority to grant or deny a motion for leave to amend was not implicated (as, for example, it would have been had plaintiffs sought to file a "supplemental complaint" pursuant to Rule 15(d)).  And, under Rule 15(a), plaintiffs had the right to amend their complaint even after the State raised its jurisdictional challenge.

But, even if plaintiffs had moved to "supplement" (rather than "amend") their original complaint pursuant to Fed. R. Civ. P. 15(d), this court would retain discretion to allow such an amendment.  That is to say, an initial lack of subject matter jurisdiction – particularly in a federal question case, <u>see</u> 28 U.S.C. § 1331 – does not prevent a court from granting leave to a plaintiff seeking to supplement a complaint.  The court of appeals recently discussed this topic at length:

> Rule 15(d) prescribes that "[t]he court may permit supplementation even though the original pleading is defective in stating a claim or defense."  This sentence was added to the rule in 1963.  It was designed to combat "the rigid and formalistic view that where the original complaint fails to state a claim upon which relief can be granted, leave to serve a supplemental complaint must be denied."  Fed. R. Civ. P. 15(d) advisory committee's note to 1963 amendment.  The new language was designed to ensure that the amended rule would "give the court broad discretion in allowing a supplemental pleading" so that plaintiffs would not be "needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief." <u>Id</u>.
>
> In keeping with this spirit of flexibility, courts generally have read Rule 15(d) <u>to include defects in subject matter jurisdiction among the deficiencies that may be corrected</u> through a supplemental pleading. The Supreme Court has signaled its approval of this praxis.  <u>See</u> <u>Mathews v. Diaz</u>, 426 U.S. 67, 75 & n. 8 (1976) . . .. The decision in <u>Mathews</u> plainly implies that <u>subject matter jurisdiction falls within the cluster of defects that may be cured by a supplemental pleading under Rule 15(d)</u>.

Our sister circuits have not hesitated to make this
implication explicit. . . .

Viewed against this backdrop, we think it manifest
that the [plaintiff's] case is well suited to a motion
for leave to supplement. Developments occurring after
the filing of the second amended complaint . . . have
dissolved the jurisdictional bar that the court below
found dispositive. . . .  Under the circumstances, it
would be a pointless formality to let the dismissal of
the second amended complaint stand - and doing so
would needlessly expose the [plaintiff] to the
vagaries of filing a new action.  We hold, therefore,
that the [plaintiff's] second amended complaint is
eligible for the proposed supplementation.

U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 5-6 (1st

Cir. 2015) (emphasis supplied).


So it is in this case (although plaintiffs stand on firmer

footing, having amended their complaint as a matter of right).

Even if the court had discretion to dismiss the case and deny

plaintiffs' the ability to amend, doing so would merely force

them to file a new case.  Such an outcome would not represent an

efficient use of the time or the resources of either the court

or the parties.  See generally Fed. R. Civ. P. 1 ("These rules

. . . should be construed, administered, and employed by the

court and the parties to secure the just, speedy, and

inexpensive determination of every action and proceeding.").

## Conclusion

For the reasons discussed, the State's motion to dismiss (**document no. 32**) and its motion to strike or otherwise dismiss the amended complaint (**document no. 38**) are denied.  Plaintiffs' motion to take judicial notice (**document no. 40**) is denied as moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 9, 2020

cc:  Abigail Graber, Esq.
     Greg P. Care, Esq.
     James P. Ziegra, Esq.
     Pamela E. Phelan Esq.
     Anthony Galdieri, Esq.
     Samuel R.V. Garland, Esq.
     Seth M. Zoracki, Esq.